No. 08-1410-ag
*Almeida v. Holder*

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: October 31, 2008        Decided: December 8, 2009)

Docket No. 08-1410-ag

FERNANDO F. ALMEIDA,

*Petitioner*,

—v.—

ERIC H. HOLDER, JR.,[1]

*Respondent*.

Before:

WALKER, B.D. PARKER, and RAGGI, *Circuit Judges*.

On a petition for review of an order of the Board of Immigration Appeals upholding an Immigration Judge's finding of removability and denial of cancellation of removal, Fernando F. Almeida challenges the agency's determination that his 2004 Connecticut convictions for larceny and narcotics possession were for aggravated felonies under 8 U.S.C.

---

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric H. Holder, Jr., is automatically substituted for former Attorney General Michael B. Mukasey.

1

§ 1101(a)(43). We conclude that petitioner's larceny conviction was an aggravated felony rendering him ineligible for cancellation of removal.

Petition for review DENIED.

---

MICHAEL A. UGOLINI, Springfield, Massachusetts, *for Petitioner*.

R. ALEXANDER GORING, Trial Attorney, Office of Immigration Litigation (Gregory G. Katsas, Assistant Attorney General, Civil Division; Blair T. O'Connor, Senior Litigation Counsel, *on the brief*), Civil Division, United States Department of Justice, Washington, D.C., *for Respondent*.

---

REENA RAGGI, *Circuit Judge*:

Fernando F. Almeida, a native of Portugal, petitions for review of a March 11, 2008 order of the Board of Immigration Appeals ("BIA") dismissing his appeal from the decision of Immigration Judge ("IJ") Michael W. Straus finding him removable under 8 U.S.C. §§ 1227(a)(2)(A)(iii) and 1227(a)(2)(B)(i) and ineligible for cancellation of removal under 8 U.S.C. § 1229b(a)(3). Almeida alleges error based on the agency's determination that two state convictions qualified as aggravated felonies. Specifically, he challenges the IJ's conclusions that (1) a 2004 second conviction for simple possession of narcotics in violation of Conn. Gen. Stat. § 21a-279(a) constituted "illicit trafficking in a controlled substance," an aggravated felony under 8 U.S.C. § 1101(a)(43)(B); and (2) a 2004 conviction for second-degree larceny in violation of Conn. Gen. Stat. §§ 53a-48 and 53a-123 was a "theft offense," and thus an aggravated felony under 8 U.S.C. § 1101(a)(43)(G). Almeida also complains of

2

various procedural errors. While our decision in <u>Alsol v. Mukasey</u>, 548 F.3d 207 (2d Cir. 2008), announced after the BIA's challenged decision in this case, casts doubt on the characterization of Almeida's narcotics conviction as an aggravated felony, we nevertheless deny the petition for review because we conclude that Almeida's larceny conviction by itself renders him removable as an aggravated felon. Nor need we consider Almeida's procedural challenges based on the review of his application for cancellation of removal, because aggravated felons are statutorily ineligible for such cancellation. <u>See</u> 8 U.S.C. § 1229b(a)(3).

## I.  **Background**

Almeida was admitted to the United States as a lawful permanent resident on or about August 14, 1969. More than thirty years later, on November 29, 2001, he pleaded guilty in Connecticut state court to narcotics possession in violation of Conn. Gen. Stat. § 21a-279(a). On October 27, 2004, he pleaded guilty to a second violation of the same statute, as well as to conspiring to commit second-degree larceny in violation of Conn. Gen. Stat. §§ 53a-48 and 53a-123. On the 2004 plea, Almeida was sentenced to three years' imprisonment.

On May 17, 2007, the Department of Homeland Security ("DHS") charged Almeida with removability under 8 U.S.C. § 1227(a)(2)(B)(i) based on his violation of a law "relating to a controlled substance." It alleged further that he was removable as an aggravated felon under 8 U.S.C. § 1227(a)(2)(A)(iii) because (1) his second narcotics conviction constituted "illicit trafficking in a controlled substance" within the meaning of 8 U.S.C. § 1101(a)(43)(B), and (2) his larceny conviction constituted a "theft offense" within the

3

meaning of 8 U.S.C. § 1101(a)(43)(G).[2]

Almeida appeared before the IJ on August 23, 2007. DHS introduced into evidence his conviction record, which noted the statutes he had violated without describing the underlying conduct. Almeida conceded his general removability but denied that he was an aggravated felon, a status that precludes cancellation of removal. See 8 U.S.C. § 1229b(a)(3).[3]

On September 21, 2007, Almeida filed for cancellation of removal, urging the IJ to apply the "categorical" approach endorsed by this court in Dickson v. Ashcroft, 346 F.3d 44 (2d Cir. 2003), and to conclude that his crimes were not aggravated felonies. See id. at 48 (providing for examination of "intrinsic nature of the offense" rather than "particular set of facts underlying . . . conviction" (internal quotation marks omitted)). Almeida argued that his second drug conviction did not satisfy the recidivist provision of 21 U.S.C. § 844(a), and thus was not an aggravated felony under 8 U.S.C. § 1101(a)(43)(B). He argued further that his 2004 larceny conviction did not qualify as a "theft offense" under 8 U.S.C. § 1101(a)(43)(G) because the BIA had interpreted "theft offense" to require an "intent to deprive," see In re V-Z-S-, 22 I. & N. Dec. 1338, 1346 (BIA 2000), and Connecticut's

_____

[2] Title 8 U.S.C. § 1101(a)(43)(U) treats inchoate crimes as the equivalent of their substantive objectives. Accordingly, in this opinion, we refer to Almeida's conviction for conspiracy to commit larceny simply as "larceny."

[3] Removal as an aggravated felon has other implications. Ordinary removal under 8 U.S.C. § 1227(a)(2)(B)(i) prevents an alien from seeking readmission within a fixed time frame (in Almeida's case, the bar would have stood for ten years, see id. § 1182(a)(9)(A)(ii)), but an alien removed as an aggravated felon may not seek readmission "at any time," id.

4

definition of larceny is satisfied by either intent to "deprive" or intent to "appropriate," Conn. Gen. Stat. § 53a-119.

On November 7, 2007, the IJ rejected these arguments in an oral decision finding Almeida removable as charged. The IJ held that, "at a minimum," Almeida was removable based on his conviction for narcotics possession. In re Fernando Almeida de Ferreira, No. A18 564 939, slip op. at 1-2 (Immig. Ct. Hartford Nov. 7, 2007). The IJ held further that Almeida was removable as an aggravated felon based on his second-degree larceny conviction, in light of our decision in Abimbola v. Ashcroft, 378 F.3d 173, 180 (2d Cir. 2004) (holding third-degree larceny under Connecticut law to be aggravated felony). Finally, the IJ held that Almeida was also removable as an aggravated felon based on the second of his drug convictions.

On March 11, 2008, the BIA dismissed Almeida's appeal from the IJ's decision. The BIA reasoned that because Almeida's 2004 drug possession occurred after his 2001 conviction under the same statute became final, the second possession "would have been punishable as a felony under the recidivist provision of 21 U.S.C. § 844(a)." In re Fernando Almeida de Ferreira, No. A18 564 939, slip op. at 2 (BIA Mar. 11, 2008) (emphasis in original).[4] As for Almeida's larceny conviction, the BIA relied on Abimbola to affirm the

_____

[4] Later that year, we held that "a second conviction for simple drug possession under state law is not a felony under the Controlled Substances Act simply because it could have been prosecuted as a recidivist offense under 21 U.S.C. § 844(a)." Alsol v. Mukasey, 548 F.3d at 210 (emphasis in original). While this makes it unlikely that Almeida's 2004 drug conviction qualifies as an aggravated felony, we need not reach that question because we

5

IJ's aggravated felony determination. It rejected Almeida's argument that, under Connecticut law, it was possible to commit second-degree larceny without the intent to deprive required for a theft offense, explaining that "larceny by 'appropriation' necessarily entails a deprivation of the owner's rights and interests in the property" at issue. Id. at 3. Having determined that Almeida was statutorily ineligible for cancellation, the BIA did not address his procedural challenges.

## II.  Discussion

### A.  Jurisdiction and Standard of Review

Although we ordinarily lack jurisdiction to review either final orders of removal under 8 U.S.C. § 1227(a)(2)(A)(iii), see id. § 1252(a)(2)(C), or judgments "regarding the granting of relief under section . . . 1229b," id. § 1252(a)(2)(B)(i), we retain jurisdiction to review "constitutional claims or questions of law raised upon a petition for review," id. § 1252(a)(2)(D), including the question whether a particular conviction is for an aggravated felony, which we review de novo, see Martinez v. Mukasey, 551 F.3d 113, 117 (2d Cir. 2008). Further, where, as here, the BIA affirms but does not expressly adopt the IJ's decision, the BIA's decision alone is the "the basis for judicial review." Garcia-Padron v. Holder, 558 F.3d 196, 199 (2d Cir. 2009) (internal quotation marks omitted).

### B.  Almeida's Larceny Conviction Was for a "Theft Offense"

Under the Immigration and Nationality Act ("INA"), an alien is removable if he is

conclude that Almeida's larceny conviction renders him removable as an aggravated felon.

6

"convicted of an aggravated felony at any time after admission." 8 U.S.C. § 1227(a)(2)(A)(iii). The INA defines "aggravated felony" to include any "theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year."[5] 8 U.S.C. § 1101(a)(43)(G). Almeida asserts that his Connecticut larceny conviction cannot be described categorically as a "theft offense" because the BIA has limited theft offenses to crimes involving a specific intent to deprive, and second-degree larceny can be proved in Connecticut based on either an intent to deprive or an intent to appropriate.

### 1.    The Term "Theft Offense" Is Broader than Common-Law Larceny

The INA does not define the term "theft offense." In construing such a term, we afford "substantial deference" to the BIA, the agency charged with implementing the INA. Abimbola v. Ashcroft, 378 F.3d at 175 (internal quotation marks omitted). We are bound to accept the BIA's construction provided it is not "arbitrary, capricious, or manifestly contrary to the statute." Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844 (1984); see also INS v. Aguirre-Aguirre, 526 U.S. 415, 424-25 (1999) (holding BIA interpretation of INA was entitled to Chevron deference).

The BIA has interpreted the term "theft offense" to sweep more broadly than

---

[5] As we have previously explained, it appears that a scrivener's error resulted in the omission of the word "is." See United States v. Pacheco, 225 F.3d 148, 152 (2d Cir. 2000).

common-law larceny.[6]  Its leading statement on the issue is In re V-Z-S-, 22 I. & N. Dec. 1338, which served as the basis for its decision in this case.  There the BIA considered whether "unlawful driving and taking of a vehicle" in violation of California law was a "theft offense."  Id. at 1347.  Acknowledging that the relevant California statute did not demand that the charged taking be permanent, as was required for common-law larceny, the BIA nevertheless identified the state crime as a "theft offense," concluding that "Congress' use of the term 'theft' is broader than the common-law definition of that term."  Id. at 1345.  The BIA construed "theft offense" to encompass any taking of property where "there is criminal intent to deprive the owner of the rights and benefits of ownership, even if such deprivation is less than total or permanent."  Id. at 1346.

In adopting a broad construction of "theft offense," the BIA relied on United States v. Turley, 352 U.S. 407, 417 (1957), in which the Supreme Court held that the word "stolen," as used in the National Motor Vehicle Theft Act, 18 U.S.C. § 2312, was not limited to common-law larceny.  See In re V-Z-S-, 22 I. & N. Dec. at 1343-44.  In support of this conclusion, the Turley Court observed that, throughout the statute's legislative history, "Congress used the word 'stolen' as synonymous with 'theft,' a term generally considered to be broader than 'commonlaw larceny.'"  352 U.S. at 414.  The purpose of the legislation

---

[6] In Connecticut, common-law larceny required "the wrongful taking and carrying away of the personal property of another" without the consent of the owner and with a specific intent to deprive permanently.  State v. Banet, 140 Conn. 118, 122, 98 A.2d 530, 531 (1953).

8

was to solve "a new problem" caused by the rise of the automobile, which was "uniquely suited to felonious taking whether by larceny, embezzlement or false pretenses." Id. at 413. Thus, the statute was properly construed to criminalize "all felonious takings of motor vehicles with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny." Id. at 417.

The BIA's reading of "theft offense" also relied on the Model Penal Code, which likewise defines "theft" more broadly than common-law larceny. See In re V-Z-S-, 22 I. & N. Dec. at 1344-45. The Model Code defines "theft" as the unlawful taking of, or the exercise of unlawful control over, movable property of another "with purpose to deprive him thereof." Model Penal Code § 223.2(1) (1980). Meanwhile, the Model Code defines the term "deprive" expansively: "(a) to withhold property of another permanently or for so extended a period as to appropriate a major portion of its economic value, or with intent to restore only upon payment of reward or other compensation; or (b) to dispose of the property so as to make it unlikely that the owner will recover it." Id. § 223.0(1). Examining these provisions, the BIA concluded that any crime meeting the Model Code's broad definition of "theft" qualified as a "theft offense" for purposes of the INA. In re V-Z-S-, 22 I. & N. Dec. at 1344-45.

The BIA's decision to construe "theft offense" as a broad, generic term is consistent with judicial decisions reading federal criminal statutes as untethered from common-law categories. For example, in United States v. Handler, 142 F.2d 351 (2d Cir. 1944), we held

9

that the word "steal," as it appeared in the National Stolen Property Act, see 18 U.S.C. § 2314, had a meaning broader than common-law larceny, see United States v. Handler, 142 F.2d at 353; see also Bell v. United States, 462 U.S. 356, 362 (1983) (holding that Federal Bank Robbery Act, codified at 18 U.S.C. § 2113, was "not limited to common-law larceny," and rejecting possibility that "Congress wished to limit the scope of the amended Act's coverage, and thus limit its remedial purpose, on the basis of an arcane and artificial distinction more suited to the social conditions of 18th century England than the needs of 20th century America"); Edwards v. Bromberg, 232 F.2d 107, 110 (5th Cir. 1956) (rejecting contention that loss by swindling did not fall within "theft deduction" of Internal Revenue Code, see 26 U.S.C. § 165, because "the word 'theft' is not like 'larceny', a technical word of art with a narrowly defined meaning but is, on the contrary, a word of general and broad connotation, intended to cover and covering any criminal appropriation of another's property to the use of the taker"). Indeed, as early as 1938, the Fifth Circuit observed that "the modern tendency is to broaden the offense of larceny, by whatever name it may be called, to include such related offenses as would tend to complicate prosecutions under strict pleading and practice," and to label such offenses "theft" or "stealing." Crabb v. Zerbst, 99 F.2d 562, 564 (5th Cir. 1938).

We have already judged the BIA's broad reading of the term "theft offense," as articulated in In re V-Z-S-, to be reasonable. See Abimbola v. Ashcroft, 378 F.3d at 176. Several other circuits have expressly adopted similar definitions of the term. See, e.g., Burke

10

v. Mukasey, 509 F.3d 695, 697 (5th Cir. 2007) (defining "theft offense" as "a taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent") (quoting Hernandez-Mancilla v. INS, 246 F.3d 1002, 1009 (7th Cir. 2001)); United States v. Vasquez-Flores, 265 F.3d 1122, 1125 (10th Cir. 2001) (same). Nor does Almeida contend that the BIA's interpretation of "theft offense" in In re V-Z-S- is arbitrary or capricious. See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. at 844. Thus, we reaffirm the reasonableness of the BIA's definition of the term "theft offense," and turn to the question whether Almeida's offense falls within that definition.

> 2. Second-Degree Larceny Under Connecticut Law Falls Within the Definition of "Theft Offense"

Although we defer to the BIA's interpretation of the term "theft offense," we owe no deference to its decision that a particular crime, defined by state law, constitutes such an offense. See Dickson v. Ashcroft, 346 F.3d at 48. In addressing such questions de novo, we generally follow the "categorical approach," under which "every set of facts violating a statute must satisfy the criteria for removability in order for a crime to amount to a removable offense," and "the BIA may not justify removal based on the particular set of facts underlying an alien's criminal conviction." Id. On the other hand, if we determine that a criminal statute is "divisible," i.e., that it "encompasses diverse classes of criminal acts . . . some of which would categorically be grounds for removal and others of which would not," we apply the "modified categorical approach," under which we may refer to the criminal record to

11

determine "whether the alien's conviction was under the branch of the statute that permits removal." Id. at 48-49. Where, as here, the challenged conviction is obtained pursuant to a guilty plea, our consideration is limited to the "facts to which a defendant actually and necessarily pleaded in order to establish the elements of the offense, as indicated by a charging document, written plea agreement, or plea colloquy transcript." James v. Mukasey, 522 F.3d 250, 257 (2d Cir. 2008) (internal quotation marks omitted).

Almeida pleaded guilty to conspiracy to commit second-degree larceny in violation of Conn. Gen. Stat. § 53a-48, which defines conspiracy, and Conn. Gen. Stat. § 53a-123, which states that a person is guilty of second-degree larceny when (1) he commits larceny as defined in Conn. Gen. Stat. § 53a-119, and (2) his crime satisfies any of several additional conditions, none of which is relevant here.[7] Section 53a-119 defines "larceny" as follows: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner." The statute provides a non-exhaustive list of eighteen offenses constituting

_____

[7] The conditions are: "(1) The property consists of a motor vehicle, the value of which exceeds ten thousand dollars, (2) the value of the property or service exceeds ten thousand dollars, (3) the property, regardless of its nature or value, is taken from the person of another, (4) the property is obtained by defrauding a public community, and the value of such property is two thousand dollars or less, (5) the property, regardless of its nature or value, is obtained by embezzlement, false pretenses or false promise and the victim of such larceny is sixty years of age or older or is blind or physically disabled, as defined in section 1-1f, or (6) the property, regardless of its value, consists of wire, cable or other equipment used in the provision of telecommunications service and the taking of such property causes an interruption in the provision of emergency telecommunications service." Conn. Gen. Stat. § 53-123(a).

12

larceny, including, <u>inter alia</u>, embezzlement, obtaining property by false pretenses, acquiring

lost property, theft of services, and receiving stolen property. <u>See</u> Conn. Gen. Stat. § 53a-

119(1), (2), (4), (7), (8). Meanwhile, Conn. Gen. Stat. § 53a-118(a) defines "deprive" and

"appropriate" as follows:

> (3) To "deprive" another of property means (A) to withhold it or cause it to be withheld from him permanently or for so extended a period or under such circumstances that the major portion of its economic value or benefit is lost to him, or (B) to dispose of the property in such manner or under such circumstances as to render it unlikely that an owner will recover such property. (4) To "appropriate" property of another to oneself or a third person means (A) to exercise control over it, or to aid a third person to exercise control over it, permanently or for so extended a period or under such circumstances as to acquire the major portion of its economic value or benefit, or (B) to dispose of the property for the benefit of oneself or a third person.

Almeida argues that because a person may be convicted of larceny under Connecticut

law based on a showing of intent either (1) "to deprive another of property" or (2) "to

appropriate the same to himself or a third person," <u>id.</u> § 53a-119, the statute is divisible into

two parts, of which only the first constitutes a "theft offense," given the BIA's construction

of that term as requiring an "intent to deprive," <u>see</u> In re V-Z-S-, 22 I. & N. Dec. at 1346.

He submits that the IJ should have applied the "modified categorical approach," requiring

DHS to show that he was convicted under the first prong in order to prove his removability

as an aggravated felon. As noted <u>supra</u> at **[4]**, DHS introduced Almeida's criminal record

in the removal proceedings before the IJ, but nothing in that record indicates which of the

two intents referenced in Conn. Gen. Stat. § 53a-119 supported his 2004 larceny conviction.

Thus, Almeida insists, there was no basis for the IJ or BIA to conclude that his conviction

13

was for a "theft offense."

This is not the first time we have examined whether larceny under Connecticut law is a "theft offense" for purposes of 8 U.S.C. § 1101(a)(43)(G). In Abimbola v. Ashcroft, as Almeida acknowledges, we held that a violation of Connecticut's third-degree larceny statute was an aggravated felony. 378 F.3d at 180. We rejected the argument that because theft of services did not fit within the definition of common-law larceny, it could not qualify as a "theft offense" under the INA. Looking to the plain language of the relevant INA provision and its legislative history, we concluded that "Congress clearly intended to incorporate a modern understanding of theft," from which it "would make little sense to exclude theft of services." Id. at 178-79. The INA's goal, we determined, was "to expand the definition of aggravated felony as applied to theft offenses to bring more convictions within its ambit." Id. at 179 (emphasis omitted).

More relevant still to Almeida's challenge, our decision in Abimbola rejected the argument that Conn. Gen. Stat. § 53a-119 "does not mandate the 'intent' element required in the BIA's definition" of "theft offense." Id.; accord Mendez v. Mukasey, 547 F.3d 345, 351 (2d Cir. 2008). We relied, in part, on language in a Connecticut Supreme Court decision indicating that an intent to deprive is a necessary element of any larceny under that state's law. See Abimbola v. Ashcroft, 378 F.3d at 179 (quoting State v. Calonico, 256 Conn. 135, 160, 770 A.2d 454, 469 (2001) ("In order to sustain a conviction under Connecticut's larceny provisions, therefore, we require proof of the existence of a felonious intent to deprive the

14

owner of the property permanently.")). We also examined the eighteen examples of larceny enumerated in Conn. Gen. Stat. § 53a-119 and concluded that each required proof of an intent to deprive, with the sole exception of § 53a-119(8), concerning the receipt of stolen property, which was nevertheless expressly included in the definition of "theft offense" at 8 U.S.C. § 1101(a)(43)(G). See id. at 179-80. We decline Almeida's invitation to retreat from Abimbola's conclusion that Connecticut's statutory definition of larceny "is not divisible because it is no broader than 'theft offense' as defined by § 1101(a)(43)(G)." Id. at 180.

We acknowledge that, to the extent Connecticut has separately defined "deprive" and "appropriate," see Conn. Gen. Stat. § 53a-118, it necessarily follows that an "intent to deprive" and an "intent to appropriate" are not identical. See, e.g., State v. Spillane, 255 Conn. 746, 751, 770 A.2d 898, 902 (2001) (noting existence of "two different types of intent that may be established to prove larceny"); State v. Coltherst, 87 Conn. App. 93, 110-11, 864 A.2d 869, 881 (Conn. App. 2005) (identifying trial court error in failure to define "appropriate" in charging jury on larceny); State v. Wieler, 35 Conn. App. 566, 578-79, 645 A.2d 1032, 1038 (Conn. App. 1994) (noting that "intent permanently to deprive . . . is only one of two alternative theories" of larceny). This state law distinction does not, however, dictate statutory divisibility in applying federal law. The critical question for purposes of determining whether Almeida's larceny conviction constitutes an aggravated felony under 8 U.S.C. § 1101(a)(43)(G) is whether it is possible to possess either an intent to deprive or

15

an intent to appropriate, as specified under Connecticut law, without satisfying the federal requirement of a "criminal intent to deprive the owner [of property] of the rights and benefits of ownership, even if such deprivation is less than total or permanent." In re V-Z-S-, 22 I. & N. Dec. at 1345-46. We think Connecticut's definitions of "deprive" and "appropriate" compel a negative answer.

Connecticut defines "deprive" for purposes of its larceny statute by reference to an owner's loss of his right to actual possession of his property. See Conn. Gen. Stat. § 53a-118(3) (referencing "withhold[ing]" of property or disposal under circumstances where the owner's recovery is "unlikely"). The state defines "appropriate" to reach further, making larcenous actions that deny an owner constructive possession of his property, i.e., his ability "to exercise control over it." Id. § 53a-118(4). In either case, the law expects the taking to be permanent or sufficiently permanent to cause the owner to lose, or the thief to acquire, "the major portion of [the property's] economic value or benefit." Id. § 53a-118(3), (4). With this understanding of the particular focus of the two state statutory definitions, we conclude that the broad, generic intent requirement of an 8 U.S.C. § 1101(a)(43)(G) "theft offense," i.e., an "intent to deprive the owner of the rights and benefits of ownership," In re V-Z-S-, 22 I. & N. Dec. at 1346, embraces both an intent to deprive and an intent to appropriate under Conn. Gen. Stat. § 53a-119.

Indeed, we think Connecticut itself recognizes that its statutory scheme, in using "intent to deprive" and "intent to appropriate" to focus on different property rights, ultimately

16

establishes a broad generic requirement of an intent to deprive another person (to the degree statutorily specified) of some rights or benefits of property ownership. See United States v. Calonico, 256 Conn. at 160, 770 A.2d at 469; see also Howard v. MacDonald, 270 Conn. 111, 129 n.8, 851 A.2d 1142, 1152 n.8 (2004) (recognizing "statutory theft" under Conn. Gen. Stat. § 52-564 as "synonymous with larceny under General Statutes § 53a-119" and construing it to require "an intent to deprive another of his property"); Whitaker v. Taylor, 99 Conn. App. 719, 732, 916 A.2d 834, 843 (Conn. App. 2007) (same); Suarez-Negrete v. Trotta, 47 Conn. App. 517, 520-21, 705 A.2d 215, 218 (Conn. App. 1998) (same).

The rights and benefits of property ownership are, after all, many. As Judge Oakes explained, they include not only the right to actual possession of a thing, but also the right to exclude others from possessing it, the right to use it and receive income from its use, the right to transmit it to another, and the right to sell, alienate, waste, or even destroy it. See Hon. James L. Oakes, "Property Rights" in Constitutional Analysis Today, 56 Wash. L. Rev. 583, 589 (1981). As a practical matter, a person cannot, without authorization, "acquire the major portion" of the "economic value or benefit" of another's property, nor can he "dispose of" that property for his own benefit or that of a third person, Conn. Gen. Stat. § 53a-118(4), without intending to deprive the owner of some of "the rights and benefits of ownership," In re V-Z-S-, 22 I. & N. Dec. at 1346. These acts of appropriation, at a minimum, evidence an intent to deprive the property owner of the right to exclude others, which the Supreme Court has recognized as "one of the most essential sticks in the bundle

17

of rights that are commonly characterized as property." Dolan v. City of Tigard, 512 U.S. 374, 393 (1994) (internal quotation marks omitted).

Almeida's efforts to hypothesize facts on which a person could intend to appropriate without intending to deprive are unconvincing. He suggests that a person who gained unauthorized access to another person's internet or cable television service – an act of appropriation specifically defined as larceny by Conn. Gen. Stat. § 53a-119(15) – would not deprive the subscriber of property because the parties could use the service simultaneously. In fact, the hypothesized scenario evidences an intent to deprive a person of the "rights and benefits of ownership" in two respects. First, to the extent the subscriber is deemed an owner of the services he paid for, the appropriation evidences an intent to deprive the owner of the right to exclude others from the use of his service. See Dolan v. City of Tigard, 512 U.S. at 393. Second, to the extent the service provider is the owner of services he makes available only to those who pay a fee, Almeida's hypothetical describes a straightforward "theft offense" within the meaning of 8 U.S.C. § 1101(a)(43)(G). See Abimbola v. Ashcroft, 378 F.3d at 179.

Almeida nevertheless urges us to follow Jaggernauth v. U.S. Attorney General, 432 F.3d 1346 (11th Cir. 2005), to rule in his favor. At issue in that case was a Florida larceny statute requiring an intent either to "[d]eprive the other person of a right to the property or a benefit from the property," or to "[a]ppropriate the property to his or her own use or the use of any person not entitled to the use of the property." See id. at 1348 (quoting Fla. Stat. §

18

812.014(1)). The Eleventh Circuit determined that the statute was divisible and that a categorical review did not permit the conclusion that a conviction under either intent prong was for a theft offense. See id. at 1354.

The Jaggernauth case is not helpful to our resolution of this petition because of differences between the Florida and Connecticut larceny statutes. The "deprive" prong of the Florida statute does not describe discrete property rights, as does Conn. Gen. Stat. § 53a-118(3), which addresses interference with actual possession through "withholding" or "disposal" of the property of another. Rather, it appears to reach any deprivation of "a right to the property or a benefit from the property," i.e., any of the "sticks in the bundle of rights" characterized as property. Dolan v. City of Tigard, 512 U.S. at 393. Similarly, in contrast to Conn. Gen. Stat. § 53a-118(4), which requires that an appropriator "acquire the major portion" of the "economic value or benefit" of the property at issue, or "dispose of" that property, the Florida statute's appropriation provision contains no language that would limit its reach to acts necessarily depriving a property owner of constructive, if not actual, possession, but instead appears to address all acts of appropriation. In any event, the Eleventh Circuit's conclusion that some acts might violate the broadly framed Florida statute, but not constitute "theft offenses" for purposes of federal law, does not control our analysis. We here construe only the Connecticut larceny statute. It is sufficient to note that Connecticut's definitions of "deprive" and "appropriate" are framed considerably more narrowly than those articulated in the statute at issue in Jaggernauth.

19

We conclude that each of the intent provisions of Conn. Gen. Stat. § 53a-119 requires proof of a generic intent to deprive a person of some rights and benefits of property and thus falls within the BIA's broad construction of "theft offense." See In re V-Z-S-, 22 I. & N. Dec. at 1346. Accordingly, we hold that Connecticut's second-degree larceny statute, Conn. Gen. Stat. § 53a-123, is not divisible, because a conviction under either of the statute's theories of intent qualifies as a "theft offense" under 8 U.S.C. § 1101(a)(43)(G), and thus as an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii). Because Almeida was convicted in 2004 of second-degree larceny under Connecticut law, the BIA correctly concluded that he was removable as an aggravated felon and therefore ineligible for cancellation of removal under 8 U.S.C. § 1229b(a)(3).

C.    Procedural Error

Finally, we address Almeida's procedural challenges. Almeida contends that the IJ erred by (1) placing on him the burden of proving that his 2004 convictions were not aggravated felonies, and (2) resolving both the question of his removability as an aggravated felon and his application for cancellation of removal at a single hearing. These contentions are without merit.

The record does not indicate improper assignment of the burden of proof. The IJ explained that, if Almeida were found removable as an aggravated felon, it would be Almeida's burden to prove that he was nonetheless entitled to cancellation. This explanation comports with applicable law. See 8 U.S.C. § 1229a(c)(4)(A)(i) ("An alien applying for

20

relief or protection from removal has the burden of proof to establish that the alien . . .

satisfies the applicable eligibility requirements.").

Nor did the IJ err by finding Almeida removable as an aggravated felon and denying

cancellation of removal at the same November 7, 2007 proceeding.  Almeida's claim that this

procedure denied him a meaningful opportunity to carry his burden on cancellation is belied

by the record, which demonstrates that he filed a 58-page brief in advance of the November

7 hearing bearing the title "Respondent's Memorandum in Support of Application for

Cancellation of Removal," and that he was permitted to argue the question to the IJ.  To the

extent Almeida claims that the IJ violated BIA rules by denying his cancellation motion at

a "master calendar hearing," even if the November 7 proceeding could be so characterized,

the manual on which Almeida relies for the purported rule did not take effect until after the

proceeding in question.

Moreover, even if we were to identify procedural error, Almeida would not be entitled

to relief, because his removability as an aggravated felon renders him statutorily ineligible

for cancellation of removal, rendering any procedural error in the denial of such relief

necessarily harmless.  See Xiao Ji Chen v. U.S. Dep't of Justice, 471 F.3d 315, 338-39 (2d

Cir. 2006) (holding remand was unnecessary where "disregarding those aspects of the IJ's

reasoning that are tainted by error, we can state with confidence that the same decision would

be made were the petition remanded"); In re Lemus-Losa, 24 I. & N. Dec. 373, 380 (BIA

2007) (holding that purported errors in denial of continuance were harmless where alien

21

sought relief for which he was ineligible).

### III.  Conclusion

To summarize, we conclude that:

1.    A conviction for second-degree larceny in violation of Conn. Gen. Stat. § 53a-123 categorically qualifies as a "theft offense" within the meaning of 8 U.S.C. § 1101(a)(43)(G) and, thus, as an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii).

2.    Having been convicted in Connecticut in 2004 of second-degree larceny, Almeida was correctly ordered removed as an aggravated felon and found statutorily ineligible for cancellation of removal under 8 U.S.C. § 1229b(a)(3).

The petition for review is DENIED.

22