# Matter of Onesta REYES, Respondent

*Decided by Attorney General July 30, 2020*

U.S. Department of Justice
Office of the Attorney General

(1) If all of the means of committing a crime, based on the elements of the statute of conviction, amount to one or more of the offenses listed in section 101(a)(43) of the Immigration and Nationality Act, 8 U.S.C. §1101(a)(43), then an alien who has been convicted of that crime has necessarily been convicted of an aggravated felony for purposes of the INA.

(2) The respondent's conviction for grand larceny in the second degree under New York Penal Law § 155.40(1) qualifies as a conviction for an aggravated felony for purposes of the INA. DHS charged that the respondent had been convicted of either aggravated-felony theft or aggravated-felony fraud, as defined in section 101(a)(43)(G) and (M)(i) of the INA, 8 U.S.C. § 1101(a)(43)(G) and (M)(i). Larceny by acquiring lost property constitutes aggravated-felony theft, and the parties do not dispute that the other means of violating the New York statute correspond to either aggravated-felony theft or aggravated-felony fraud.

## BEFORE THE ATTORNEY GENERAL

On November 21, 2019, I directed the Board of Immigration Appeals ("Board") to refer this case to me for review. I also invited the parties and interested amici to brief the question whether an alien who has been convicted of a criminal offense necessarily has been convicted of an aggravated felony for purposes of section 237(a)(2)(A)(iii) of INA, 8 U.S.C. § 1227(a)(2)(A)(iii), where all of the elements of the statute of conviction, and thus all of the means of committing the offense, correspond either to an aggravated-felony theft offense, as defined in section 101(a)(43)(G) of the INA, 8 U.S.C. § 1101(a)(43)(G), or to an aggravated-felony fraud offense, as defined in section 101(a)(43)(M)(i) of the INA, 8 U.S.C. § 1101(a)(43)(M)(i). *Matter of Reyes*, 27 I&N Dec. 708 (A.G. 2019).

For the reasons set forth in the accompanying opinion, I vacate the Board's order affirming the termination of the removal proceeding and dismissing the appeal. I conclude that an alien's prior conviction is for an aggravated felony where all of the elements of the statute of conviction, and thus all of the means of committing the offense, correspond to at least one of the aggravated-felony offenses specified in section 101(a)(43) of the INA. I abrogate any decision of the Board inconsistent with the accompanying

opinion and remand this matter to the Board for further proceedings consistent with the opinion.

The Immigration and Nationality Act ("INA") makes removable any alien who is convicted of an "aggravated felony" after admission into the United States. INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii). It defines "aggravated felony" to include many generic offenses, such as murder, theft, and burglary. INA § 101(a)(43), 8 U.S.C. § 1101(a)(43). These offenses are generic in the sense that they are not themselves crimes, but instead descriptions intended to capture violations of federal, state, and foreign criminal codes. In deciding whether an alien has been convicted of an aggravated felony, then, it is necessary to determine whether the particular offense of conviction corresponds to one or more of the generic offenses listed in the INA's definition.

The Supreme Court has held that making this determination generally requires resort to an analytical technique called the "categorical approach." *E.g.*, *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013). The categorical approach disregards "the facts of the particular prior case." *Id.* (internal quotation marks omitted). Instead, it typically focuses on the elements of the statute of conviction to see if they categorically map on to the elements of an aggravated felony charged in the immigration proceeding, so that all of the means of committing the underlying offense necessarily constitute commission of that aggravated felony. *See id.* An alien is removable based on a prior conviction "only if" the underlying offense "necessarily involved . . . facts equating to" commission of an aggravated felony. *Id.* (internal quotation marks omitted).

The categorical approach can generate significant questions concerning whether a particular offense of conviction corresponds with a generic offense included in the INA's definition of "aggravated felony." Here, the Department of Homeland Security ("DHS") initiated a removal proceeding against the respondent on account of her conviction for grand larceny in the second degree in violation of New York Penal Law § 155.40(1). DHS contends that the respondent's conviction meets the definition of theft, 8 U.S.C. § 1101(a)(43)(G), or of fraud, *id.* § 1101(a)(43)(M)(i). In DHS's view, the state-law crime of which the respondent was convicted necessarily constitutes either aggravated-felony theft or aggravated-felony fraud.

The respondent moved to terminate the proceeding. She did not contest in the immigration courts that she had been convicted of either aggravated-felony theft or aggravated-felony fraud—that is, she did not dispute that her violation of the New York statute necessarily involved facts meeting the definition of an aggravated felony under one of the two generic offenses. But the respondent argued that she is not removable

because her offense of conviction does not categorically map on to either aggravated-felony theft or aggravated-felony fraud, taken individually.  The immigration judge accepted respondent's argument and terminated the proceeding.  The Board of Immigration Appeals ("Board") affirmed, agreeing that it may compare the elements of the statute of conviction only "to *one* of the generic crimes listed in [section 101(a)(43)] at a time."  *Matter of Reyes*, A031 123 346, slip op. at *7 (BIA Apr. 24, 2019).

The respondent does not explain why she should avoid removal simply because both the immigration judge and the Board could not settle on which one of two aggravated felonies she had committed.  And I do not believe that either the INA or the Supreme Court's precedent requires such a result.  If all of the means of committing a crime, based on the elements of the statute of conviction, amount to one or more of the offenses listed in section 101(a)(43) of the INA, then an alien who has been convicted of that crime has necessarily been convicted of an aggravated felony as that term is defined in the INA.  Accordingly, I vacate the decision below and remand to the Board for further proceedings.

## I.

The INA imposes immigration-related consequences on any alien who is convicted of certain serious crimes.  As relevant here, "[a]ny alien who is convicted of an aggravated felony at any time after admission" is removable from the United States.  8 U.S.C. § 1227(a)(2)(A)(iii).  In addition, an alien convicted of an aggravated felony is not eligible for certain forms of discretionary relief, such as asylum, cancellation of removal, and voluntary departure.  *See id.* § 1158(b)(2)(A)(ii), (B)(i); *id.* § 1229b(a)(3), (b)(1)(C); *id.* § 1229c(b)(1)(C).

Section 101(a)(43) of the INA defines "aggravated felony" to mean any of a long list of serious offenses spelled out across subparagraphs (A) through (T), *id.* § 1101(a)(43)(A)–(T), and any "attempt or conspiracy to commit an offense described in" the foregoing provisions, *id.* § 1101(a)(43)(U).  Some of the subparagraphs list familiar crimes, such as "murder," "rape," and "burglary."  *Id.* § 1101(a)(43)(A), (G).  Other subparagraphs define categories of offenses through cross-references to various provisions of the U.S. Code, *e.g.*, *id.* § 1101(a)(43)(B) ("illicit trafficking in a controlled substance (as defined in section 802 of Title 21)"), or capture offenses that relate to or involve particular conduct, *e.g.*, *id.* § 1101(a)(43)(K)(i) ("an offense that . . . relates to the owning, controlling, managing, or supervising of a prostitution business").  The offenses in section 101(a)(43) are not themselves substantive crimes, but rather descriptions of crimes that may be

committed under federal, state, and foreign law. *See id.* § 1101(a)(43) ("The term ['aggravated felony'] applies to an offense described in this paragraph whether in violation of Federal or State law and applies to such an offense in violation of the law of a foreign country for which the term of imprisonment was completed within the previous 15 years.").

When DHS seeks to remove an alien based on a conviction for an aggravated felony, it ordinarily charges the alien with having been convicted of one or more of the offenses listed in section 101(a)(43). Under the "categorical approach" that applies to most aspects of the aggravated-felony definition, DHS generally must show that the elements of the offense of which the alien has been convicted match those of at least one of the offenses listed in section 101(a)(43). It does not matter what "label [is] assign[ed] to a crime" or "the means by which the defendant, in real life, committed his crime[]." *Mathis v. United States*, 136 S. Ct. 2243, 2251 (2016). Instead, DHS generally must show that the elements of the statute of conviction categorically map onto those of a listed offense in order to establish that the conviction necessarily amounted to the commission of an aggravated felony. *See Moncrieffe*, 569 U.S. at 190 ("[W]e examine what the state conviction necessarily involved, not the facts underlying the case[.]"); *see also Shular v. United States*, 140 S. Ct. 779, 783 (2020) (explaining that the analysis requires either defining and comparing "offense elements" or determining "whether the conviction meets some other [statutory] criterion"). If the fact of conviction does not establish a conviction for an aggravated felony, then DHS may not rely upon that conviction as a basis for removal.[1]

In this case, the particular types of offenses at issue are aggravated-felony theft, which is defined as "a theft offense (including receipt of stolen property) . . . for which the term of imprisonment [is] at least one year," 8 U.S.C. § 1101(a)(43)(G), and aggravated-felony fraud, which is defined as "an offense . . . that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000," *id.* § 1101(a)(43)(M)(i). The Board has previously examined the line between theft and fraud. In *Matter of Garcia-Madruga*, 24 I&N Dec. 436 (BIA 2008), the Board concluded that "[t]he key and controlling distinction between these two crimes is . . . the 'consent' element." *Id.* at 439 (internal quotation marks omitted). Aggravated-felony theft entails "the taking of, or exercise of control over,

---

[1] The Supreme Court has rejected the view that the conviction must establish the commission of an aggravated felony to a logical certainty and requires instead that there be "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).

property *without consent* whenever there is criminal intent to deprive the owner of the rights and benefits of ownership, even if such deprivation is less than total or permanent." *Id.* at 440–41 (emphasis added). Aggravated fraud, by contrast, involves a taking "*with consent* that has been *fraudulently obtained.*" *Id.* at 440 (emphases added); *see also id.* at 439 ("in a fraud scheme, the owner has voluntarily 'surrendered' his property, because of an 'intentional perversion of truth,' or otherwise 'act[ed] upon' a false representation to his injury") (internal quotation marks omitted). The Board has therefore concluded that theft and fraud are mutually exclusive.

## II.

The respondent, a native and citizen of Italy, was admitted to the United States in 1972 as a lawful permanent resident. In 2014, she pleaded guilty to grand larceny in the second degree under New York Penal Law § 155.40(1). She was convicted and sentenced to a term of one to three years' imprisonment.

In 2015, DHS began a removal proceeding based upon the respondent's 2014 conviction. DHS specified in the Notice to Appear that the conviction qualified as a theft offense under section 101(a)(43)(G). Two weeks later, DHS changed course and instead described the conviction as a fraud offense under section 101(a)(43)(M)(i). Then, on the eve of a scheduled hearing, DHS identified theft as an additional charge to fraud. *See* 8 C.F.R. § 1003.30 ("At any time during deportation or removal proceedings, additional or substituted charges of deportability and/or factual allegations may be lodged by [DHS] in writing."). DHS explained that "research and consideration of where the law stands on this issue makes the Government believe that both charges may be correct." *Matter of Reyes*, Hearing Transcript at *32 (Immig. Ct. July 14, 2015). DHS thus chose to pursue both aggravated-felony offenses in the removal proceeding.

The respondent moved to terminate the proceeding. Because New York law defines larceny to include both a taking of property without consent and one where consent was fraudulently obtained, *see infra* Part III.B, the respondent argued that the statute of conviction is not a categorical match to either aggravated-felony theft or aggravated-felony fraud. Even if the New York offense must constitute *either* theft *or* fraud, she contended, the immigration judge could not determine using the categorical approach the one particular aggravated felony that she had committed. Therefore, she argued, her larceny conviction could not support her removal.

The immigration judge granted the motion to terminate. The immigration judge concluded that the New York statute defines a single crime that "is

much broader than either of the charges brought by the Government." *Matter of Reyes*, Order on Motion to Terminate at *4 (Immig. Ct. July 28, 2015). After DHS appealed, the Board invited the parties and interested amici to submit supplemental briefs addressing "[w]hether DHS can establish removability by charging an alien as an aggravated felon under two separate aggravated felony definitions, neither of which would independently be a categorical match to the statute of conviction, if all means of violating the statute fall within at least one of the charged aggravated felony definitions." Letter for Michael Zamel Goldman, Esq., from Rebecca Noguera, Appeals Examiner, Board of Immigration Appeals (Jan. 24, 2018). The Board also invited supplemental briefing on the question "[w]hether all means of violating New York Penal Law § 155.05 would meet the definition of an aggravated felony as defined in either section 101(a)(43)(G) [aggravated-felony theft] OR section 101(a)(43)(M) [aggravated-felony fraud]." *Id.*

In April 2019, the Board affirmed the termination of the removal proceeding in a split unpublished decision. The Board "assume[d] without deciding" that all of the means of committing larceny under the New York statute amount either to aggravated-felony theft or aggravated-felony fraud. *See Reyes*, slip op. at *3 n.4. But the majority concluded that because the statute reaches both takings without consent and those with fraudulently obtained consent, it is "overbroad relative to the definition of a theft offense at section 101(a)(43)(G)" and "overbroad relative to the definition of 'fraud or deceit' at section 101(a)(43)(M)(i)." *Id.* at *3. The majority explained that "neither the Supreme Court nor the circuit courts have used the categorical approach to determine whether an alien has been convicted of an 'aggravated felony' by looking to multiple definitions listed in section 101(a)(43) in combination." *Id.* at *6–7. Therefore, the majority surmised, "we may only compare the State crime to *one* of the generic crimes listed in that section at a time."[2] *Id.* at *7.

One Board member dissented, asserting that the majority's approach yielded a "patently absurd result." *Id.* at *11 (O'Connor, dissenting). He described the categorical approach as a "tool for discerning what crime an alien was necessarily convicted of," *id.* at *10 (internal quotation marks and

---

[2]  There is no dispute about the $10,000-loss requirement of section 101(a)(43)(M)(i), or about the term-of-imprisonment requirement of section 101(a)(43)(G), which, in any event, can be proved with evidence other than the offense elements, *see Nijhawan v. Holder*, 557 U.S. 29, 40 (2009). Respondent was convicted under New York Penal Law § 155.40(1), which requires that the value of the property "exceed[] fifty thousand dollars," and was sentenced to between one and three years' imprisonment.

emphasis omitted), and reasoned that "[w]hile there may be uncertainty over whether the respondent was convicted of a theft offense or a fraud offense, there can be no uncertainty that she was convicted of an aggravated felony offense," *id.* "[T]hat ends the analysis," the dissent concluded, because section 237(a)(2)(A)(iii) of the INA makes removable any alien who is convicted of any aggravated felony. *Id.* at *11.

In November 2019, I directed the Board to refer this case to me for review and invited supplemental briefing from the parties and interested amici on the question whether an alien who has been convicted of a criminal offense necessarily has been convicted of an aggravated felony where all of the elements of the statute of conviction—and thus all of the means of committing the offense—correspond either to aggravated-felony theft or to aggravated-felony fraud. *Matter of Reyes*, 27 I&N Dec. 708 (A.G. 2019). For the reasons explained below, I conclude that the respondent's 2014 conviction for grand larceny under New York law is necessarily a conviction for an aggravated felony as defined in section 101(a)(43) of the INA.

## III.

The INA provides that an alien who is convicted of an "aggravated felony" is removable from the United States. 8 U.S.C. § 1227(a)(2)(A)(iii). DHS charged that the respondent had been convicted of either aggravated-felony theft or aggravated-felony fraud, and the Board assumed that was the case. The Board nonetheless concluded that the respondent is not removable, because it could not determine using the categorical approach which one of the two aggravated felonies matches the respondent's offense of conviction.

No doubt the categorical approach, by ignoring the respondent's real-world offense, may sometimes lead to bizarre results. *See, e.g.*, *Mathis*, 136 S. Ct. at 2255–56 (acknowledging the "oddities" and "counter-intuitive consequences" that may result); *United States v. Chapman*, 866 F.3d 129, 136 (3d Cir. 2017) (en banc) (Jordan, J., concurring) (lamenting that the approach "require[s] judges to ignore the real world"); *United States v. Faust*, 853 F.3d 39, 61 (1st Cir. 2017) (Lynch, J., concurring) (noting "counterintuitive results"). Indeed, the categorical approach has proven to be particularly disruptive to the immigration system, because in a number of cases it has prevented the removal of aliens who have unquestionably been convicted of serious crimes, all because of the manner in which a state legislature has phrased a particular criminal statute or a state court has interpreted its elements. *See, e.g.*, *Amos v. Lynch*, 790 F.3d 512 (4th Cir. 2015) (holding that an alien's conviction under Maryland law for sexually

abusing a five-year-old boy did not qualify as a conviction for "sexual abuse of a minor," 8 U.S.C. § 1101(a)(43)(A)); *see generally United States v. Burris*, 912 F.3d 386, 408 (6th Cir.) (Thapar, J., concurring) (likening the categorical approach to a "lottery" or "game of chance," in which the outcome "depends on how a state legislature and its judiciary have defined and interpreted [a] crime"). A test that produces outcomes that seem random or disconnected from reality can undermine the rule of law. But the Supreme Court has spoken. Here, even accepting as I must the limitations of the categorical approach, I believe that the Board's wooden application of it in this context conflicts with common sense and was not required by the governing precedent.

## A.

Although it is necessary to determine whether the underlying statute of conviction meets the INA's definition of an aggravated felony, *see, e.g.*, *Moncrieffe*, 569 U.S. at 191, nothing in the INA requires that the elements of a statute of conviction correspond to one and only one offense listed in section 101(a)(43). Where it is known to a practical certainty that an alien has been convicted of at least one such offense, the conviction qualifies, even if the categorical approach does not permit a conclusive determination about which one (here, theft or fraud).

The respondent argues that she "is aware of no precedent standing for the principle that removability may be established through the application of multiple aggravated felony definitions," and therefore an underlying conviction must correspond to one and only one type of aggravated felony. Respondent's Memorandum of Law in Response to Attorney General's Invitation to Submit Brief at 5 (Dec. 18, 2019) ("Respondent's Br."). The Board likewise viewed DHS as proposing a "novel methodology" where two types of aggravated felonies could be aggregated together. *Reyes*, slip op. at *5. Amici who filed briefs in support of the respondent go further and read the universe of cases applying the categorical approach to demand a "one-to-one" comparison between the underlying criminal statute and a single generic offense. *E.g.*, Brief of the National Immigration Project of the National Lawyers Guild et al., at 4 (Jan. 15, 2020).

I am not persuaded by these arguments. The cases on which the Board and the amici rely, involving a one-to-one comparison of underlying criminal statute and aggravated felony, reflect the fact that in each of those cases, the government had charged only a single aggravated felony (or other type of generic offense). None of the cases holds that a court is required to compare the alien's underlying crime to one, and only one, generic offense at a time.

Moreover, before the Supreme Court's decisions in *Mathis* and *Descamps v. United States*, 570 U.S. 254 (2013), courts more routinely considered the records of the earlier criminal proceeding to obtain a better understanding of the nature of the underlying crime. Such a measure would likely have made it easier to determine which one of two (or more) potentially applicable aggravated felonies applied. Although the Court in those decisions emphasized that consideration of the trial-court record is restricted, that does not mean that an alien who indisputably was convicted of an aggravated felony may evade that conclusion simply because there is a lack of clarity about which aggravated felony the conviction reflects.

This understanding finds support in how the Ninth Circuit addressed a similar issue when applying the categorical approach to a provision of the federal Sentencing Guidelines. In *United States v. Becerril-Lopez*, 541 F.3d 881 (9th Cir. 2008), the court analyzed whether an alien's conviction under a California statute qualified as a "crime of violence" under the commentary to section 2L1.2 of the Guidelines. At the time, the commentary defined "crime of violence" to include "robbery" or "extortion." U.S. Sentencing Guidelines Manual § 2L1.2 cmt. n.1.B.iii (2005). Applying the categorical approach, the court held that the California statute defined a crime of violence because all of the means of committing the underlying offense corresponded to the essential elements of either robbery or extortion. *See Becerril-Lopez*, 541 F.3d at 892 ("[I]f a conviction under Cal. Penal Code § 211 involved a threat not encompassed by generic robbery, it would necessarily constitute generic extortion and therefore be a 'crime of violence' under U.S.S.G. § 2L1.2."). In *United States v. Chaves-Cuevas*, 862 F.3d 729 (9th Cir. 2017), the court confirmed the continuing validity of this approach, explaining that "the categorical approach in *Becerril-Lopez* was not a conduct-based analysis" of the sort barred by *Mathis* and *Descamps* because *Becerril-Lopez* "focused squarely on the elements of California robbery and the relevant generic offenses and not on a particular defendant's conduct." *Id.* at 740.

The Board dismissed *Becerril-Lopez* on the ground that the decision involved an interpretation of the Sentencing Guidelines rather than the INA. *See Reyes*, slip op. at *6. But when the categorical approach applies to an inquiry about whether a conviction meets a definition, it does not matter whether the definition appears in the INA, a criminal statute, or the Sentencing Guidelines. The Supreme Court accordingly has observed that it has "appl[ied] the categorical approach set forth in [a criminal case] to the INA." *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1568 (2017) (describing *Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007)); *see also Kawashima v. Holder*, 565 U.S. 478, 483 (2012) (same). In fact, the Ninth

Circuit in *Becerril-Lopez* treated both immigration and criminal decisions as relevant precedents when explaining the categorical approach. *See Becerril-Lopez*, 541 F.3d at 890 (quoting *Duenas-Alvarez* and citing criminal cases).

The Board further suggested that *Becerril-Lopez* was "no longer good law" in the Ninth Circuit. *Reyes*, slip op. at *6 n.7. But that decision was superseded only because of subsequent amendments to the Sentencing Guidelines, which rendered the California statute overbroad relative to the new definition of "crime of violence." *See United States v. Bankston*, 901 F.3d 1100, 1104 (9th Cir. 2018) ("Under Amendment 798, Guidelines-defined extortion does not criminalize extortion committed by threats to property; California robbery does. California robbery is thus no longer a categorical match to a combination of Guidelines-described robbery and extortion, and *Becerril-Lopez*'s holding to the contrary no longer controls."). The fact that the Sentencing Commission amended the definition in a way that upset the specific result in *Becerril-Lopez* simply has no bearing on that case's sensible conclusion that, where all of the means of committing an offense correspond to one or the other of two different crimes of violence, then a conviction for the offense necessarily counts as a conviction for a crime of violence.

The Board also rejected *Becerril-Lopez*'s approach on the ground that it would effectively create a "hybrid" aggravated felony of theft/fraud, which would be similar to the "hybrid offense theory" that the Third Circuit has repudiated. *See Al-Sharif v. U.S. Citizenship and Immigration Services*, 734 F.3d 207 (3d Cir. 2010) (en banc) (overruling *Nugent v. Ashcroft*, 367 F.3d 162 (3d Cir. 2004)). In *Nugent*, the Third Circuit determined that a Pennsylvania statute criminalizing theft by deception constituted a "hybrid crime" implicating both aggravated-felony theft and aggravated-felony fraud. *See* 367 F.3d at 177–79; *id.* at 179–80 (Rendell, J., concurring) (describing the offense as a "hybrid crime"). The court held that to constitute an aggravated felony, it was not sufficient for the alien's conviction under the statute to meet the definition of *either* aggravated-felony theft *or* aggravated-felony fraud, but rather, the offense must satisfy the requirements for *both* theft *and* fraud. *See id.* at 179 ("[Nugent's] convict[ion] under Pennsylvania's theft by deception statute does not qualify as an aggravated felony as defined by the INA, because although the term of imprisonment imposed on Nugent was one year or more [as required by section 101(a)(43)(G)], the victims' loss did not exceed $10,000 [as required by section 101(a)(43)(M)(i)]."). In *Al-Sharif*, the en banc Third Circuit overruled this "hybrid offense theory" as contrary to the plain text of the INA and held that it was sufficient for the state-law offense to meet the

requirements of only one of the offenses in the aggravated-felony definition. 734 F.3d at 213.

The Board's discussion of the hybrid-offense theory is perplexing because DHS does not contend here that New York larceny should be viewed as a hybrid offense under *Nugent* that must satisfy the elements of both theft and fraud. Nor does DHS seek to fuse the criteria of section 101(a)(43)(G) with that of section 101(a)(43)(M)(i) to create a novel aggravated felony. What DHS does contend is that the respondent was convicted of an aggravated felony because, under New York law, her larceny conviction necessarily constitutes one of two listed offenses. I agree. If an alien has been convicted of one of two (or more) offenses listed in section 101(a)(43), then the alien has necessarily been convicted of an aggravated felony for purposes of the INA, even if the strictures of the categorical approach obscure the specific offense committed.[3]

This reasoning is supported by the structure of the INA's definition of aggravated felony. There is significant internal overlap between various parts of that definition. For instance, section 101(a)(43)(F) includes "a crime of violence . . . for which the term of imprisonment [is] at least one year," and that category includes several offenses that are separately listed elsewhere in the definition, such as "murder" and "rape" (subparagraph (A)), the use of fire or explosives to destroy property (subparagraph (E)(i)), and "burglary" (subparagraph (G)). Similarly, subparagraph (K)(i) refers to offenses related to running a prostitution business, which could include offenses in subparagraph (A) ("sexual abuse of a minor") or subparagraph (K)(ii) (transporting someone, for commercial advantage, for the purpose of engaging in prostitution). By including overlapping categories within its many-pronged definition of aggravated felony, Congress evidently sought to capture more offenses. What matters is that a serious crime necessarily falls within the definition somewhere, not whether it falls within one particular prong or another. When all means of committing the offense of conviction satisfy one or the other of two alternative aggravated felonies, the conviction does not fall between stools. Instead, it is necessarily supported by one or the other, even if the categorical approach obscures which one.

---

[3]   Section 239(a)(1) of the INA requires that an alien in removal proceedings receive written notice of, among other things, "[t]he charges against the alien and the statutory provisions alleged to have been violated." 8 U.S.C. § 1229(a)(1)(D). As the Board noted, there are constitutional dimensions to this requirement. *Reyes*, slip op. at *4 n.6. (citing *Nolasco v. Holder*, 637 F.3d 159, 163 (2d Cir. 2011)). The Board here correctly determined that the respondent had adequate notice of and opportunity to respond to the specific charges of removability. *Id.*

B.

Whether the respondent was convicted of either aggravated-felony theft or aggravated-felony fraud depends on whether the statute of conviction categorically fits within one or the other. As noted above, the Board assumed without deciding that all of the means of committing larceny under New York Penal Law § 155.40(1) amount to either aggravated-felony theft or aggravated-felony fraud. Although the respondent did not dispute this issue before the Board, she has objected to this assumption before me, and I exercise my discretion to consider the issue.

New York Penal Law § 155.40(1) provides that "[a] person is guilty of grand larceny in the second degree when he steals property and when . . . the value of the property exceeds fifty thousand dollars." New York Penal Law § 155.05(1) explains that "[a] person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof." New York Penal Law § 155.05(2) then identifies various methods of committing larceny:

Larceny includes a wrongful taking, obtaining or withholding of another's property, with the intent prescribed in subdivision one of this section, committed in any of the following ways: (a) By conduct heretofore defined or known as common law larceny by trespassory taking, common law larceny by trick, embezzlement, or obtaining property by false pretenses; (b) By acquiring lost property . . . ; (c) By committing the crime of issuing a bad check . . . ; (d) By false promise . . . ; [or] (e) By extortion.[4]

DHS contends that all of the theories of larceny under New York Penal Law § 155.05(2) meet the generic definition of either aggravated-felony theft or aggravated-felony fraud as defined in *Garcia-Madruga*. Specifically, DHS identifies larceny by trespassory taking, acquiring lost property, and extortion as aggravated-felony theft, and larceny by trick, false pretenses, embezzlement, issuing a bad check, and false promises as aggravated-felony fraud.

---

[4]   The parties agree that the various methods of committing larceny that are outlined in New York Penal Law § 155.05(2) constitute different means rather than alternative elements; in the argot of the categorical approach, the statute of conviction is "indivisible." *See Mathis*, 136 S. Ct. at 2248–49. Numerous cases hold that the prosecution need not prove the particular manner in which the property was stolen. *See, e.g.*, *People v. Tighe*, 768 N.Y.S.2d 871, 872 (N.Y. App. Div. 2003); *People v. Ponnapula*, 655 N.Y.S.2d 750, 759–60 (N.Y. App. Div. 1997).

As noted, before the Board, the respondent did not dispute DHS's contentions, either in her initial brief or in the supplemental brief requested by the Board. The respondent now argues that one theory of larceny under New York Penal Law § 155.05(2)—larceny by acquiring lost property—"is neither a fraud nor a theft aggravated felony." Respondent's Br. at 2. The respondent asserts that "[a]cquiring lost property under New York Penal Law § 155.05(2)(b) does not involve taking property from the victim *with* or *without consent*, but merely involves exercising control over, and failing to make reasonable measures to return[,] property which may have come into one's possession through no fault of one's own." *Id.* The respondent further asserts that larceny by acquiring lost property "can be performed in the absence of consent, or by mistaken consent," and therefore it does not satisfy the definition of theft as stated in *Garcia-Madruga*. *Id.*

The respondent cites no precedent in support of that interpretation, and I conclude that larceny by acquiring lost property categorically meets the definition of aggravated-felony theft. New York law provides that a person has committed larceny by acquiring lost property when "with the intent prescribed in subdivision one"—that is, "with intent to deprive another of property or to appropriate the same to himself or to a third person," New York Penal Law § 155.05(1)—"he exercises control over property of another which he knows to have been lost or mislaid, or to have been delivered under a mistake as to the identity of the recipient or the nature or amount of the property, without taking reasonable measures to return such property to the owner." *Id.* § 155.05(2)(b). In *Garcia-Madruga*, the Board held that aggravated-felony theft entails "the taking of, or exercise of control over, property without consent whenever there is criminal intent to deprive the owner of the rights and benefits of ownership, even if such deprivation is less than total or permanent." 24 I&N Dec. at 440–41.

Larceny by acquiring lost property categorically fits within aggravated-felony theft. First, larceny by acquiring lost property requires an "exercise[] [of] control over property of another." N.Y. Penal Law § 155.05(2)(b). Aggravated-felony theft requires "the taking of, or exercise of control over, property" of another. *Garcia-Madruga*, 24 I&N Dec. at 440–41. Second, larceny by acquiring lost property requires a lack of consent—the owner is incapable of having consented, as the property has been "lost," "mislaid," or "delivered under a mistake," and the possessor both "knows" this and fails to take "reasonable measures" to return it. N.Y. Penal Law § 155.05(2)(b). Aggravated-felony theft requires that the taking or exercise of control occur "without consent." *Garcia-Madruga*, 24 I&N Dec. at 440–41. Third, larceny by acquiring lost property requires "intent to deprive another of property," or "to appropriate the same." N.Y. Penal Law

§ 155.05(2)(b); *see also People v. Jennings*, 512 N.Y.S.2d 652, 659 (1986) (noting that "the terms 'deprive' and 'appropriate' . . . connote a purpose . . . to exert permanent or virtually permanent control over the property taken, or to cause permanent or virtually permanent loss to the owner of the possession and use thereof"). Aggravated-felony theft requires a "criminal intent to deprive," even if the deprivation is "less than total or permanent." *Garcia-Madruga*, 24 I&N Dec. at 440–41.[5]

Because larceny by acquiring lost property constitutes aggravated-felony theft, and because there is no dispute that the other means of violating New York Penal Law § 155.40(1) correspond to either aggravated-felony theft or aggravated-felony fraud, I conclude that the respondent's conviction under the statute is for an aggravated felony.

## C.

The respondent's final argument is that, if I conclude that her conviction for larceny is one for an aggravated felony, then I cannot apply that conclusion in this case because it constitutes a "new" rule whose application would be "impermissibly retroactive." Respondent's Br. at 4. The respondent relies on *Obeya v. Sessions*, 884 F.3d 442 (2d Cir. 2018), where the court explained that "[a]gencies may create new rules through adjudication, but the retroactive application of the resulting rules 'must be balanced against the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles.'" *Id.* at 445 (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947)). This argument fails for several reasons.

First, there is no retroactivity problem here. This opinion does not announce any "new" rule, because I have not departed from settled precedent or practice. *See Judulang v. Holder*, 565 U.S. 42, 63 n.12 (2011) ("Because

---

[5] In *Almeida v. Holder*, 588 F.3d 778 (2d Cir. 2009), the Second Circuit rejected an argument that a Connecticut larceny statute incorporates theories of larceny not included within the INA's definition of aggravated-felony theft because, like the New York statute at issue here, a conviction under the Connecticut statute may rest on proof of intent to appropriate rather than intent to deprive. *See id.* at 787–88. The court reasoned that, under Connecticut law, the phrases "intent to deprive" and "intent to appropriate" are "focus[ed] on different property rights," but both "ultimately establish[] a broad generic requirement of an intent to deprive another person (to the degree statutorily specified) of some rights or benefits of property ownership." *Id.* at 788. *Almeida* forecloses any similar argument that the respondent may have made in this case, because the phrases "to deprive" and "to appropriate" are defined identically under Connecticut and New York law. *Compare* Conn. Gen. Stat. § 53a-118(a)(3)–(4), *with* N.Y. Penal Law § 155.00(3)–(4).

we find the BIA's prior practice so unsettled, we likewise reject Judulang's argument that *Blake* and *Brieva-Perez* were impermissibly retroactive."); *cf. Obeya*, 884 F.3d at 448 (concluding that the BIA had created a new rule where its decision "expressly effected a clear departure from longstanding BIA precedent"). Neither the respondent nor amici have identified any case reaching a contrary result on the legal questions here. The respondent maintains that she is "aware of no precedent" recognizing an aggravated felony under similar circumstances, Respondent's Br. at 5, but the absence of such precedent demonstrates at most an ambiguity in the law, rather than a settled understanding to the contrary upon which she could have reasonably relied. *See Judulang*, 565 U.S. at 63 n.12. And, as discussed above, the closest precedent on point—the Ninth Circuit's decision in *Becerril-Lopez*—applied the categorical approach precisely as I have.

Second, even if this opinion announces something that could be considered a "new" principle of law, there would be no barrier to applying it in this case. As a general proposition, "where legal consequences hinge upon the interpretation of statutory requirements, and where no pre-existing interpretive rule construing those requirements is in effect, nothing prevents the agency from acting retroactively through adjudication." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 224 (1988) (Scalia, J., concurring).[6] Consistent with that understanding, there is a well-recognized "exception" to the anti-retroactivity principle for a litigant whose case gives rise to a new legal interpretation, because that person had an opportunity to present argument to the agency and ran the risk that the agency would use his case to announce the new understanding. *Velásquez-Garcia v. Holder*, 760 F.3d 571, 580–81 (7th Cir. 2014). There can be no doubt that the respondent here had a full and fair opportunity to present argument on the dispositive issues, including two rounds of briefing before the Board, and another round before me.

Third, the respondent has not established, and cannot establish, that she relied on what she supposes to be the old rule—a fact that is fatal under the balancing tests applied by some courts to address retroactivity claims,

---

[6] Courts have on occasion regarded an agency's adjudication as more akin to a rulemaking, and for that reason have held that the general principle of the agency's decision may be applied only prospectively. *See De Niz Robles v. Lynch*, 803 F.3d 1165, 1172–75 (10th Cir. 2015) (Gorsuch, J.); *see also Velásquez-Garcia v. Holder*, 760 F.3d 571, 581 (7th Cir. 2014). But this case does not involve any of the facts that were most critical in *De Niz Robles*—that the alien clearly relied on an old rule; that the agency clearly adopted a new legal principle; that a court ultimately deferred to the agency's interpretation of a statute under administrative-law principles; and that the alien's reasonable expectations were unsettled as a result. *See* 803 F.3d at 1167–68, 1172–75.

especially when added to the reasons I have already given for rejecting the respondent's claim. *See Obeya*, 884 F.3d at 445 (considering "whether the case is one of first impression"; whether the new rule abruptly "depart[s] from well-established practice"; whether the party had relied on the former rule; "the degree of the burden which a retroactive order places on a party"; and "the statutory interest in applying a new rule"); *De Niz Robles v. Lynch*, 803 F.3d 1165, 1177 (10th Cir. 2015) (Gorsuch, J.) (discussing the same factors, and explaining that they "direct our attention to the question whether the petitioner can claim reasonable reliance on some past rule or decision"). The respondent asserts that it was "eminently reasonable" for her to plead guilty to the larceny charge based on her understanding of the state of the law at that time. Respondent's Br. at 5. But the respondent does not explain what authorities would have reasonably supported her understanding, and she could not seriously maintain that she relied upon a prediction about the meaning of "aggravated felony" under the INA when she chose to plead guilty. Moreover, the respondent acknowledged during her plea colloquy that she had consulted with an immigration attorney and understood that a guilty plea could lead to her removal. DHS Notice of Filing of Intended Evidence, Ex. C at 12–13 (Immig. Ct. May 14, 2015) (Plea Minutes, *People v. Reyes*, No. 1997N-13 (N.Y. Sup. Ct. Apr. 3, 2014)). On these facts, there is no basis to avoid applying the correct legal principle to the respondent's case.

## IV.

For the reasons set forth above, I conclude that the respondent's 2014 conviction for grand larceny in the second degree under New York Penal Law § 155.40(1) is necessarily one for an aggravated felony under section 101(a)(43) of the INA. Because the respondent was convicted of an aggravated felony, the Board erred in affirming the immigration judge's order terminating the removal proceeding and in dismissing DHS's appeal. I vacate the decision below and remand for further proceedings consistent with this opinion.