# Matter of Valentine C. MORGAN, Respondent

*Decided March 18, 2022*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Larceny in the third degree under section 53a-124(a) of the Connecticut General Statutes is not a theft offense aggravated felony under section 101(a)(43)(G) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(G) (2018), because it incorporates by reference a definition of "larceny" under section 53a-119 of the Connecticut General Statutes that is overbroad and indivisible with respect to the generic definition of a theft offense. *Almeida v. Holder*, 588 F.3d 778 (2d Cir. 2009), and *Abimbola v. Ashcroft*, 378 F.3d 173 (2d Cir. 2004), not followed.

FOR THE RESPONDENT: Shernette G. Noyes, Esquire, Stratford, Connecticut

BEFORE: Board Panel: CASSIDY, COUCH, and OWEN, Appellate Immigration Judges.

OWEN, Appellate Immigration Judge:

In a decision dated July 9, 2018, the Immigration Judge found the respondent removable as charged and denied his applications for relief. The respondent has appealed from that decision, arguing, in part, that he is not removable based on a conviction for an aggravated felony. The respondent's appeal will be sustained, in part, and the record will be remanded.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Jamaica and a lawful permanent resident of the United States since 1991. He has three convictions that are pertinent here: two convictions for possession of narcotics in violation of section 21a-279(a) of the Connecticut General Statutes and a 2006 conviction for attempt to commit larceny in the third degree in violation of sections 53a-124 and 53a-49 of the Connecticut General Statutes, for which he was sentenced to a term of imprisonment of 1 year.

The Department of Homeland Security ("DHS") charged the respondent with removability under sections 237(a)(2)(A)(iii) and (B)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii), (B)(i) (2018), for having been convicted of an aggravated felony as defined in

sections 101(a)(43)(G) and (U) of the Act, 8 U.S.C. § 1101(a)(43)(G), (U) (2018), and for a controlled substance offense. The Immigration Judge sustained the charges of removability. As relief from removal, the respondent applied for asylum under section 208(a)(1) of the Act, 8 U.S.C. § 1158(a)(1) (2018), withholding of removal under section 241(b)(3) of the Act, 8 U.S.C. § 1231(b)(3) (2018), and protection under the regulations implementing the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Dec. A/RES/39/708 (1984) ("Convention Against Torture").[1] The Immigration Judge concluded that the respondent was ineligible for asylum because of his conviction of an aggravated felony. *See* sections 208(b)(2)(A)(ii), (B)(i) of the Act. The Immigration Judge further denied the respondent's applications for withholding of removal or protection under the Convention Against Torture.

The respondent filed a timely appeal. He argues that these proceedings should be terminated, that he has not been convicted of an aggravated felony, and that he should be granted relief.[2]

## II. ANALYSIS

### A. Termination

We will deny the respondent's motion to terminate these proceedings in light of *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). Although the respondent's notice to appear did not include the time and place of his initial removal hearing, he was later served with a compliant notice of hearing specifying this information and appeared at all subsequent hearings. Therefore, jurisdiction properly vested with the Immigration Court and neither the United States Supreme Court's decision in *Pereira v. Sessions*, nor its decision in *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021), require us to terminate removal proceedings. *See Matter of Arambula-Bravo*, 28 I&N Dec. 388, 390–92 (BIA 2021); *see also Chery v. Garland*, 16 F.4th 980, 986–87 (2d Cir. 2021).

---

[1] The respondent also indicated an intention to seek cancellation of removal under section 240A(a) of the Act, 8 U.S.C. § 1229b(a) (2018), but the Immigration Judge concluded that he was barred from that relief based on his conviction for an aggravated felony. *See* section 240A(a)(3) of the Act.

[2] The respondent does not challenge the Immigration Judge's determination that he is removable from the United States based on a conviction for a controlled substance offense.

### B. Aggravated Felony

The respondent argues that his conviction under sections 53a-124 and 53a-49 of the Connecticut General Statutes is not an aggravated felony under sections 101(a)(43)(G) and (U) the Act. Section 101(a)(43)(G) defines an aggravated felony as "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year." Section 101(a)(43)(U) defines an aggravated felony as "an attempt or conspiracy to commit an offense described in this paragraph." There is no dispute that the respondent's sentence to 1 year of imprisonment satisfies the requirement of section 101(a)(43)(G) or that criminal attempt under section 53a-49 constitutes an "attempt" offense under section 101(a)(43)(U) of the Act. *See* Conn. Gen. Stat. § 53a-49(a) (2006). The issue before us is whether the respondent's conviction under section 53a-124 constitutes a "theft offense" under section 101(a)(43)(G). We review this issue de novo. 8 C.F.R. § 1003.1(d)(3)(ii).

To determine whether an offense is an aggravated felony, we employ the categorical approach by comparing the elements of the state offense to the generic federal definition. *See Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016); *Descamps v. United States*, 570 U.S. 254, 257 (2013); *Matter of Koat*, 28 I&N Dec. 450, 452 (BIA 2022). We focus on the elements defining the offense of conviction and the minimum conduct that has a "realistic probability" of being prosecuted under the statute. *Moncrieffe v. Holder*, 569 U.S. 184, 191, 206 (2013) (citation omitted) (stating that to demonstrate a realistic probability, the State must "actually prosecute[]" conduct outside the generic definition of the crime). A state crime is not a categorical match with a generic federal offense if its elements are broader than those of the generic offense. *See Mathis*, 136 S. Ct. at 2251.

As explained in *Mathis*, an "element" of a statute is what the "prosecution must prove to sustain a conviction" and the jury must unanimously find beyond a reasonable doubt. *Id.* at 2248 (citation omitted); *see also Ramos v. Louisiana*, 140 S. Ct. 1390, 1397 (2020) (holding that jury verdicts must be unanimous in state and federal criminal trials). When confronted with an alternatively phrased statute, the Supreme Court instructed courts to look first at the statute itself and sources such as case law and jury instructions to determine whether the listed items are elements or means. *Mathis*, 136 S. Ct. at 2256. When state law does not provide a clear answer, a court may "peek at the [record] documents . . . for the sole and limited purpose of determining whether [the listed items are] element[s] of the offense." *Id.* at 2256–57 (alterations in original) (citation omitted).

At all relevant times, the respondent's conviction under section 53a-124(a) of the Connecticut General Statutes defined the offense of larceny in the third degree, in relevant part, as follows:

> (a) A person is guilty of larceny in the third degree when he commits larceny, as defined in section 53a-119, and: (1) The property consists of a motor vehicle, the value of which is five thousand dollars or less; (2) the value of the property or service exceeds one thousand dollars; (3) the property consists of a public record . . . or (4) the property consists of . . . any other article, material, device or substance which constitutes, represents, evidences, reflects or records a secret scientific or technical process, invention or formula or any phase or part thereof.

Section 53a-124(a) incorporates the definition of larceny in section 53a-119. At the time of the respondent's offense, section 53a-119 defined "larceny" in relevant part as follows:

> A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to:
> (1) Embezzlement. . . .
> (2) Obtaining property by false pretenses. . . .
> (3) Obtaining property by false promise. . . .
> (4) Acquiring property lost, mislaid or delivered by mistake. . . .
> (5) Extortion. . . .
> (6) Defrauding of public community. . . .
> (7) Theft of services. . . .
> (8) Receiving stolen property. . . .
> (9) Shoplifting. . . .
> (10) Conversion of a motor vehicle. . . .
> (11) Obtaining property through fraudulent use of an automated teller machine. . . .
> (12) Library theft. . . .
> (13) Conversion of leased property. . . .
> (14) Failure to pay prevailing rate of wages. . . .
> (15) Theft of utility service. . . .
> (16) Air bag fraud. . . .
> (17) Theft of motor fuel. . . .

Conn. Gen. Stat. § 53a-119 (2006).

To qualify as an aggravated felony "theft offense" under section 101(a)(43)(G) of the Act, a crime must involve a "taking of property or an exercise of control over property *without consent* with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent." *Matter of Ibarra*, 26 I&N Dec. 809, 811 (BIA 2016) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183,

189 (2007)). This Board has interpreted the term "theft offense" to exclude offenses in which a person or institution is tricked into voluntarily surrendering property to another. *See Matter of Garcia-Madruga*, 24 I&N Dec. 436, 437–38, 440–41 (BIA 2008) (holding that welfare fraud under Rhode Island law is not a "theft offense" because the elements of the offense include the acquisition of property with consent that has been fraudulently obtained).

With these principles established, we now consider whether larceny under sections 53a-124(a) and 53a-119 constitutes a generic theft offense. We recognize that we do not write on a blank slate with regard to this issue. Understandably, the Immigration Judge relied upon the Court of Appeals for the Second Circuit's precedent decisions holding that larceny under Connecticut law is categorically a theft offense to conclude that the respondent has been convicted of an aggravated felony under sections 101(a)(43)(G) and (U) of the Act. *See Almeida v. Holder*, 588 F.3d 778, 785–89 (2d Cir. 2009) (holding that second degree larceny under section 53a-123 of the Connecticut General Statutes is categorically an aggravated felony theft offense); *Abimbola v. Ashcroft*, 378 F.3d 173, 177–80 (2d Cir. 2004) (holding that third degree larceny under section 53a–124 is categorically an aggravated felony theft offense).[3]

We acknowledge the holdings of *Almeida* and *Abimbola*, as well as the axiomatic principle that we are generally constrained to follow precedent decisions from the controlling circuit court. *See Matter of Anselmo*, 20 I&N Dec. 25, 31–32 (BIA 1989). However, we conclude that these cases do not control here. Neither of these cases considered nor ruled on the specific dispositive legal issue presented in this case: whether larceny as defined under Connecticut law distinguishes between taking property with consent that was fraudulently obtained and taking property without consent. *See Matter of Garcia-Madruga*, 24 I&N Dec. at 440-41.

In *Abimbola*, the Second Circuit gave deference to the Board's definition of theft in *Matter of V-Z-S-*, 22 I&N Dec. 1338 (BIA 2000), and concluded that third degree larceny under Connecticut law is categorically a theft offense because it necessarily satisfies the "intent to deprive" element of our definition of theft, and because the stolen property need not be tangible to constitute a theft. *See Amimbola*, 378 F.3d at 176–80; *see also Matter of V-Z-S-*, 22 I&N Dec. at 1346 (holding that a taking of property constitutes a "theft offense" under section 101(a)(43)(G) of the Act whenever there is

---

[3] All degrees of larceny under Connecticut law incorporate the definition of larceny in section 53a-119 of the Connecticut General Statutes.

criminal intent to deprive the owner of the rights and benefits of ownership, even if such deprivation is less than total or permanent).

In *Almeida*, the Second Circuit again deferred to the definition of "theft" we articulated in *Matter of V-Z-S-* and concluded that second degree larceny under Connecticut law is categorically a theft offense. In arriving at this conclusion, the Second Circuit rejected the respondent's argument that "to deprive another of property" and "to appropriate [the property of another to oneself] or a third person" as used in the Connecticut definition of larceny have different meanings and that only the former falls within the definition of a theft offense. *Id*. at 786–88. Rather, the Court concluded that the Connecticut definition of larceny establishes "a broad generic requirement of an intent to deprive another person (to the degree statutorily specified) of some rights or benefits of property ownership." *Id*. at 788.

Both *Almeida* and *Abimbola* gave deference to, and applied, the definition of theft we articulated in *Matter of V-Z-S-*.[4] The focus of the parties' arguments and of the Second Circuit's analysis in both cases was whether the definition of Connecticut larceny satisfied the intent to deprive element of our definition of theft.

Subsequent to our decision in *Matter of V-Z-S-*, in an effort to distinguish a "theft offense" under section 101(a)(43)(G) of the Act from "an offense that involves fraud or deceit" under section 101(a)(43)(M)(i) of the Act, 8 U.S.C. § 1101(a)(43)(M)(i), this Board interpreted the term "theft offense" to exclude offenses in which a person or institution is tricked into voluntarily surrendering property to another. *See Matter of Garcia-Madruga*, 24 I&N Dec. at 439–41. The Second Circuit has not considered in a precedent decision the modified definition of "theft" we articulated in *Matter of Garcia-Madruga* as it relates to whether larceny under Connecticut state law is a theft offense for purposes of section 101(a)(43)(G) of the Act.

The Second Circuit has recognized, however, the limitations of *Almeida* and *Abimbola* in an unpublished decision. In that decision, the Second Circuit noted that neither precedent decisions considered the distinction between taking property with and without consent or the distinction the Board has made between fraud and theft offenses. *See Bastian-Mojica v. Sessions*, 716 F. App'x. 45, 47 (2d Cir. 2017). In fact, the Second Circuit remanded that case to the Board to clarify whether Connecticut's larceny offense is an aggravated felony theft offense in light of the Board's

---

[4]  The Second Circuit has also more recently deferred to the Board's construction of "theft offense" in an unpublished opinion. *Ya Yi Zeng v. Barr*, 828 F. App'x. 27, 29 (2d Cir. 2020).

distinction between theft and fraud.[5]  *See id*. at 47; *see also Smith v. Barr*, 809 F. App'x. 54, 55 (2d Cir. 2020) (applying *Matter of Garcia-Madruga* and concluding that a larceny conviction under New York law is not an aggravated felony theft offense because the offense can "be committed by the taking of property with consent such as through larceny by trick, embezzlement, or obtaining property by false pretenses").[6]  Accordingly, we do not consider the dispositive issue in this case—whether larceny as defined under section 53a-119 distinguishes between taking property with consent that was fraudulently obtained (i.e. a fraud offense) and taking property without consent (i.e. a theft offense)—to be controlled by Second Circuit law.

Having concluded that the outcome of the particular issue raised in this case is not controlled by authority from the Second Circuit, we now consider de novo whether larceny under section 53a-124(a) is a "theft offense" under section 101(a)(43)(G) of the Act.  We conclude that the definition of larceny under section 53a-119 is overbroad and indivisible and that a conviction under section 53a-124(a) is not a theft offense for purposes of section 101(a)(43)(G) of the Act.

At the time of the respondent's conviction in 2006, section 53a-124(a) incorporated the definition of larceny in section 53a-119 and set out four subsections based on the type of property.  Thus, to determine whether section 53a-124(a) is a theft offense, we first consider the definition of larceny in section 53a-119.  If this definition is overbroad and indivisible with respect to the theft or fraud issue (i.e. a taking without consent or a taking with consent fraudulently obtained), we need not engage in further analysis of section 53a-124(a).[7]

---

[5]  In *Bastian Mojica,* 716 F. App'x at 47, the Second Circuit specifically noted that while "the BIA understandably felt obliged to follow *Abimbola* and *Almeida*," it "will be alerted by this Order to the fact that we do not consider those decisions to have adjudicated [the distinction between theft and fraud], [and] it will be free upon remand to consider [the respondent's] claim anew."  It is this admonition we seek to address here.

[6]  We acknowledge that a different panel of the Second Circuit discussed the consent issue in an unpublished decision in which the court held the Board did not abuse its discretion in denying a motion to reconsider.  *Forbes v. Lynch*, 642 F. App'x. 29, 30–31 (2d Cir. 2016) (concluding that section 53a-119 of the Connecticut General Statutes includes a "without consent" requirement although it is not specifically enumerated).  However, the discussion of the issue in that case was dicta and, in any event, the unpublished decision is not controlling authority in this case.

[7]  We acknowledge that during the pendency of this appeal, the Attorney General issued *Matter of Reyes*, 28 I&N Dec. 52, 59–62 (A.G. 2020), holding that a respondent convicted of a State theft statute can be convicted of an aggravated felony if all of the means of committing the crime based on the elements of the statute of conviction amount to either

By its terms, section 53a-119 defines larceny expansively, to include such acts as "obtaining property by false pretenses," "obtaining property by false promise," "defrauding of public community" and "air bag fraud." Conn. Gen. Stat. § 53a-119(2), (3), (6), (16). Such acts are not "theft offenses" under *Matter of Garcia-Madruga* because they do not require the *nonconsensual* taking of property; rather, they involve takings of property with consent that was fraudulently obtained.[8]

Moreover, although some Connecticut cases generally assert that a lack of consent is a necessary element of the crime of larceny, other cases specify that a taking of property must be without the knowing consent of the owner. *See State v. Calonico*, 770 A.2d 454, 465–66 (Conn. 2001) (collecting cases

---

aggravated felony theft or an aggravated felony fraud offense. For *Matter of Reyes* to apply here, the Immigration Judge would have to find that the respondent's conviction for attempted theft by fraud under sections 53a-124 and 53a-49 involved a potential loss to the victim of more than $10,000, as required by section 101(a)(43)(M)(i) of the Act. *See Matter of S-I-K-*, 24 I&N Dec. 324, 326–28 (BIA 2007) (holding that a respondent convicted of conspiracy to commit fraud need only demonstrate that the potential, rather than actual, loss to the victim exceeded $10,000); *see also Matter of F-R-A-*, 28 I&N Dec. 460, 463 (BIA 2022) (noting that the circumstance-specific approach applies to determining whether the loss to the victim exceeds $10,000). The Immigration Judge made no such finding.

[8]  Section 53a-119 of the Connecticut General Statutes defines the relevant offenses as follows:

> (2) Obtaining property by false pretenses. A person obtains property by false pretenses when, by any false token, pretense of device, he obtains from another any property, with intent to defraud him or any other person.
> (3) Obtaining property by false promise. A person obtains property by false promise when, pursuant to a scheme to defraud, he obtains property of another by means of a representation, express or implied, that he or a third person will in the future engage in particular conduct, and when he does not intend to engage in such conduct or does not believe that the third person intends to engage in such conduct. . . .
> (6) Defrauding of public community. A person is guilty of defrauding a public community who (A) authorizes, certifies, attests or files a claim for benefits or reimbursement from a local, state or federal agency which he knows is false; or (B) knowingly accepts the benefits from a claim he knows is false; or (C) as an officer or agent of any public community, with intent to prejudice it, appropriates its property to the use of any person or draws any order upon its treasury or presents or aids in procuring to be allowed any fraudulent claim against such community. . . .
> (16) Air bag fraud. A person is guilty of air bag fraud when such person, with intent to defraud another person, obtains property from such other person or a third person by knowingly installing or reinstalling any object in lieu of an air bag that was designed in accordance with federal safety requirements . . . .

and concluding that larceny requires a lack of knowing consent). Defining larceny to include a lack of *knowing* consent is consistent with the expansive definition of larceny found at section 53a-119 and would include takings with consent obtained through fraud. In light of *Matter of Garcia-Madruga*, we conclude that section 53a-119 is overbroad vis-à-vis the generic definition of theft under section 101(a)(43)(G) of the Act in that the scope of larceny under Connecticut law includes both theft and fraud offenses.

Having concluded that the definition of larceny in section 53a-119 is overbroad in that it includes both theft and fraud offenses, we next consider whether the statute is divisible, such that we may apply the modified categorical approach to search the record of conviction to ascertain which type of larceny articulated in section 53a-119 the respondent was convicted of committing. *Mathis*, 136 S. Ct. at 2249; *Descamps*, 570 U.S. at 261–64; *see also Matter of Chairez*, 26 I&N Dec. 819, 822–23 (BIA 2016).

Under *Mathis*, the divisibility of a statute depends on whether the statutory alternatives are discrete "elements" as opposed to "means" of committing an offense. *Mathis*, 136 S. Ct. at 2256. Thus, if the different types of larceny articulated in section 53a-119 constitute separate offenses involving elements that must be proven to the jury, the definition of larceny is divisible. However, if the different subsections are merely different means of committing larceny and the jury can disagree on the manner in which larceny was committed, the definition is not divisible. To resolve this issue, we look first to the statute itself and then, if necessary, to "authoritative sources of state law" to determine whether a jury must unanimously choose between the alternative methods of committing larceny when convicting a defendant under section 53a-124(a). *Id.* at 2256.

We conclude that the definition of larceny under section 53a-119 is not divisible under *Mathis*. Section 53a-119 defines larceny in the alternative by listing more than a dozen discrete types of conduct, but the list is plainly "drafted to offer 'illustrative examples'" and not to define alternative elements. *Mathis*, 136 U.S. at 2256 (citation omitted). Specifically, section 53a-119's list is preceded by an introductory clause stating that "[l]arceny includes, but is not limited to" the following list, thereby making clear that the list is nonexhaustive and its enumerated acts are merely examples of some of the myriad of ways larceny can be committed in Connecticut.

In sum, we conclude the broad definition of larceny under Connecticut law includes both theft and fraud offenses, and that *how* a person committed a larceny is not an element of the offense under section 53a-124(a). Because section 53a-124(a) is overbroad and indivisible, we cannot employ a modified categorical analysis to determine whether the respondent was convicted of conduct that qualifies as a theft offense. *See Id.* at 2256.

Therefore, pursuant to *Matter of Garcia-Madruga*, 24 I&N Dec. at 440–41, the respondent's charge of removability based on an aggravated felony under sections 101(a)(43)(G) and (U) of the Act cannot be sustained.[9]  *See* section 237(a)(2)(A)(iii) of the Act.

In light of our determination that the respondent's conviction for attempted larceny in the third degree in violation of sections 53a-124 and 53a-49 is not an aggravated felony, we conclude that remand is appropriate for additional consideration of his eligibility for asylum and cancellation of removal.  We express no opinion regarding the ultimate outcome of these proceedings.[10]  Accordingly, the following orders will be entered.

**ORDER:**  The appeal is sustained, in part.

**FURTHER ORDER:**  The record is remanded for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

---

[9]  The determination in this case that the respondent has not been convicted of an aggravated felony is a consequence of the necessity of applying the categorical approach. As numerous adjudicators have noted, the categorical approach can be exceedingly complex, and often leads to results that are contrary to common sense and that Congress did not intend.  *See e.g., United States v. Scott*, 990 F.3d 94, 126 (2d Cir. 2021) (Park, J., concurring) ("[T]he categorical approach perverts the will of Congress, leads to inconsistent results, wastes judicial resources, and undermines confidence in the administration of justice."); *Matter of Rosa*, 27 I&N Dec. 228, 234–37 (BIA 2018) (O'Connor, concurring) (collecting cases noting the deficiency of the categorical approach and calling for Congressional reform), *vacated by Rosa v. Att'y Gen. U.S.*, 950 F.3d 67 (3d Cir. 2020); *Matter of Velasquez*, 25 I&N Dec. 278, 284 (BIA 2010) (Malphrus, concurring) (noting that the categorical approach may allow many respondents convicted of spousal or child abuse to avoid the immigration consequences that Congress had intended for those offenses).

[10]  We decline, at this point, to consider the respondent's arguments relating to his eligibility for withholding of removal under the Act and for protection under the Convention Against Torture.